UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVRA BOMMARITO, an individual,<br><br>        Plaintiff,<br><br>   v.<br><br>THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY and MARK MAJEWSKI,<br><br>        Defendants. | CIV. NO. 2:15-1187 WBS DB<br><br>MEMORANDUM AND ORDER RE: MOTION FOR DISQUALIFICATION OF COUNSEL AND MOTION TO STRIKE |

        Plaintiff Devra Bommarito brought this action against defendants The Northwestern Mutual Life Insurance Company ("Northwestern Mutual") and Mark Majewski alleging breach of contract. Plaintiff now moves to disqualify Northwestern Mutual's counsel, Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree"), on the ground that a former Ogletree employee had a conflict of interest. Plaintiff also moves to strike Northwestern Mutual's Motion for Summary Judgment and Motion for the Application of ERISA, currently set for hearing on April 2, 2018.

1

I. Factual and Procedural Background

The Grey Firm P.C. ("Grey") has represented plaintiff in her action against defendant Northwestern Mutual ("the Bommarito matter") since 2016. (Pl.'s Mot. (Docket No. 40) at 3.) Since before the inception of this lawsuit, the San Francisco office of Ogletree has represented Northwestern Mutual, with partner Sean P. Nalty ("Nalty") as lead counsel. (Id.) Ogletree attorneys Cara Barrick ("Barrick") and Shivani Nanda ("Nanda") have also appeared as counsel of record in this action and are registered on the case's Electronic Case Filing ("ECF") notice system. (Id.)

From August 10, 2016 through May 22, 2017, Grey employed Landa Chappell ("Chappell") as an office administrator, paralegal, and legal secretary. (Id. at 4.) During her employment with Grey, Chappell worked on the Bommarito matter. (Id.) Chappell was exposed to the entire case file and was an active participant and recipient of attorney-client communications. (Id.)

Chappell left Grey in May 2017 and on August 21, 2017 she was hired by the San Francisco office of Ogletree. (Id. at 5.) Chappell worked as a practice assistant at Ogletree through February 12, 2018. (Decl. of Landa Chappell ("Chappell Decl.") (Docket No. 43-2) ¶ 3.) While at Ogletree, Chappell was assigned to work with Barrick, one of the attorneys of record for the Bommarito matter. (Id. ¶ 6.) On February 26, 2018, Northwestern Mutual filed a Motion for Summary Judgment and for the Application of ERISA to this case. (Docket No. 36.)

II. Motion for Disqualification

A.  <u>Legal Standard</u>

Because a motion to disqualify is most often tactically motivated and can be disruptive to the litigation process, disqualification is considered to be a drastic measure that is generally disfavored and imposed only when absolutely necessary. <u>Optyl Eyewear Fashion Int'l Corp. v. Style Cos.</u>, 760 F.2d 1045, 1050 (9th Cir. 1985) (requests for disqualification "should be subjected to 'particularly strict judicial scrutiny'") (quoting <u>Rice v. Baron</u>, 456 F. Supp. 1361, 1370 (S.D.N.Y. 1978)).

In a motion for disqualification based on a conflict of a non-attorney, the "party seeking disqualification must show that its present or past attorney's former employee possesses confidential attorney-client information materially related to the proceedings before the court." <u>In re Complex Asbestos Litig.</u>, 232 Cal. App. 3d 572, 596 (1st Dist. 1991). However, "[h]iring a former employee of an opposing counsel is not, in and of itself, sufficient to warrant disqualification of an attorney or law firm." <u>Id.</u> at 592. Rather, once the party seeking disqualification demonstrates that its former employee possesses confidential information, "a rebuttable presumption arises that the information has been used or disclosed in the current employment." <u>Id.</u> at 596. In order to rebut this presumption,

> the challenged attorney has the burden of showing that the practical effect of formal screening has been achieved. The showing must satisfy the trial court that the employee has not had and will not have any involvement with the litigation, or any communication with attorneys or coemployees concerning the litigation, that would support a reasonable inference that the information has been used or disclosed. If the challenged attorney fails to make this showing, then the court may disqualify the attorney and law firm.

3

Id.

Additionally, California courts have concluded that, "[i]n exercising its discretion with respect to granting or denying a disqualification motion, a trial court may properly consider the possibility that the party brought the motion as a tactical device to delay litigation." Id. (internal citations omitted). Accordingly, if "the party opposing the motion can demonstrate prima facie evidence of unreasonable delay in bringing the motion causing prejudice to the present client, disqualification should not be ordered." Id. At that point, "[t]he burden then shifts back to the party seeking disqualification to justify the delay." Id.

B. Discussion

Plaintiff's Motion to Disqualify Ogletree from representing Northwestern Mutual is based on the allegation that Chappell disclosed, or could have disclosed, confidential information related to the Bommarito matter that she obtained while working at Grey. In support of this argument, plaintiff states that Chappell was "a core member of the Bommarito legal team" and that she "possessed intimate knowledge of confidential information, work product and [a] treasure trove of privileged material in Plaintiff's file." (Pl.'s Mot. at 2.) Accordingly, plaintiff has demonstrated that Chappell "possesses confidential attorney-client information materially related to the proceedings before the court," and defendant must prove that Chappell did not, and will not, have any involvement with the Bommarito matter, including discussing any information related to the case

4

with any Ogletree attorneys or employees.

Defendant argues, and the court agrees, that it has been able to rebut the presumption that Chappell disclosed any relevant information to anyone working at Ogletree. In her declaration, Chappell herself explains that she did not disclose any information about plaintiff specifically or about the Bommarito matter generally, nor did she ever even discuss the topic with anyone at Ogletree. (Chappell Decl. ¶¶ 4, 5.) Further, while employed by Ogletree, Chappell "did not work on the Bommarito matter at all" and she "had no involvement in the matter other than [she] received ECF notices in [her] Outlook account." (Id. ¶ 6.)

Additionally, in her declaration Chappell explains that an "ethical wall" had been put in place by Ogletree before she was employed, and thus she was unable to view any documents pertaining to the Bommarito matter, even if she had wanted to. (Id.) In fact, at Ogletree all practice assistants, except for Lorraine Latorraca and Beth Davis, who are specifically assigned to work for Nalty, are "ethically walled off" from all matters Nalty is handling, including Bommarito. (Natly Decl. ¶ 13.) Accordingly, Chappell would have been walled off from the Bommarito matter under any circumstances, and she would have needed specific permission from Nalty to access the Bommarito file. (Id.) Nalty never gave Chappell permission to access the files, and as such it is clear that Chappell remained walled off from the Bommarito matter throughout the course of her employment

with Ogletree.[1]

Plaintiff counters that because Chappell was the assistant for Barrick, one of the attorneys of record for the Bommarito matter, she was registered on the ECF notices in the case and thus had "unfettered access to the Bommarito file and unrestricted communication with the entire Ogletree firm." (Pl.'s Mot. at 2.) It is undisputed that four ECF filings had Chappell's email address listed on them. However, Chappell left Ogletree on February 12, 2018, and the summary judgment and ERISA motions were not filed until February 26, 2018. Accordingly, because these filings occurred after Chappell had left Ogletree, she did not receive the ECF filings of them. (Decl. of Sean P. Nalty ("Nalty Decl.") (Docket No. 41-1) ¶ 9.)

As for the other two ECF filings--a stipulation modifying the scheduling order filed by Grey, and a court order granting the stipulation--defendant concedes that, because Chappell worked for Barrick, she did receive these notices in her email account. (Id.) However, as previously explained, because of the ethical wall that was in place, Chappell was unable to view either of these documents, or any other ECF notification documents. (Chappell Decl. ¶ 6.)

Additionally, while Chappell was employed by Ogletree, Barrick did not work on the Bommarito matter at all. (Decl. of Cara Barrick ("Barrick Decl.") (Docket No. 41-9) ¶¶ 4, 5.)

---

[1] The court recognizes plaintiff's argument that it does not appear defense counsel contacted Grey to discuss Chappell's employment history prior to hiring her. Nevertheless, the court concludes that because of the automatic ethical wall that was in place, Chappell was sufficiently separated from the Bommarito matter.

6

1  Barrick states that she is only on the caption on the Bommarito
2  matter, and therefore received the ECF filings, because she is
3  "the emergency back-up for Mr. Nalty in case he is absent or
4  otherwise unable to respond due to an emergency." (Id. ¶ 7.)
5  While Chappell was employed, Barrick "never did anything in this
6  emergency-based role in the Bommarito matter." (Id.) Based on
7  this information, the court is persuaded that Chappell did not
8  have, and will not have, any involvement in the Bommarito matter,
9  and that she did not disclose any confidential information
10 related to the case to anybody at Ogletree.
11       Moreover, the court also notes that Grey did not raise
12 this purported issue of conflict until after defendant had
13 already filed its Motion for the Application of ERISA and for
14 Partial Summary Judgment. Plaintiff's counsel was put on notice
15 that Chappell had received ECF notices on November 13, 2017, and
16 against on December 18, 2017, when the Stipulation and Order
17 granting the stipulation were filed. However, plaintiff waited
18 until now, four months later, to raise this issue. Based on this
19 delay, the court has serious concerns that plaintiff is only
20 bringing this motion for tactical reasons. See Graphic Process
21 Co. v. Superior Court, 95 Cal. App. 3d 43, 52 (explaining that an
22 attempt to disqualify counsel "must be viewed as part of the
23 tactics of an adversary proceeding. As such it demands judicial
24 scrutiny to prevent literalism from possibly overcoming
25 substantial justice to the parties."). Accordingly, the court
26 will deny plaintiff's Motion for Disqualification of Counsel.
27 III. Motion to Strike
28       Because the court concludes that there is no basis to

disqualify Ogletree from representing Northwestern Mutual, and in light of the fact that the evidence indicates that Chappell was not involved in the preparation of defendant's Motion for Partial Summary Judgment (Docket No. 36), the court will deny plaintiff's Motion to Strike this motion.

IT IS THEREFORE ORDERED that plaintiff's Motion for Disqualification of Counsel and Motion to Strike (Docket No. 40) be, and the same hereby is, DENIED.

Dated: March 12, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE