UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DEVRA BOMMARITO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY and MARK MAJEWSKI,<br><br>Defendant. | No. 2:15-cv-1187 WBS DB<br><br>ORDER RE: BILL OF COSTS |

----oo0oo----

After judgment in favor of defendant was entered (Docket No. 59) following a grant of partial summary judgment, defendant Northwestern Mutual Life Insurance Company ("Northwestern Mutual") submitted a Bill of Costs totaling $13,541.14 for the costs of subpoenas, transcripts, witness fees, copies, and related expenses. (Docket No. 60). Plaintiffs have filed objections to the Bill of Costs on several grounds, arguing that the court should not award any costs, or should reduce or

1

disallow costs for many items listed.[1] (Docket No. 61).

Rule 54(d)(1) of the Federal Rules of Civil Procedure and Local Civil Rule 54.1 govern the taxation of costs, which are generally subject to limits set under 28 U.S.C. § 1920. See 28 U.S.C. § 1920 (enumerating taxable costs); Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."); Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 440-45 (1987) (limiting taxable costs to those enumerated in § 1920).

The court exercises its discretion in determining whether to allow certain costs. See Amarel v. Connell, 102 F.3d 1494, 1523 (9th Cir. 1996) (district court has discretion to determine what constitutes a taxable cost within the meaning of § 1920). The losing party has the burden of overcoming the presumption in favor of awarding costs to the prevailing party. See Russian River Watershed Prot. Comm. v. City of Santa Rosa, 142 F.3d 1136, 1144 (9th Cir. 1998) (noting that the presumption "may only be overcome by pointing to some impropriety on the part of the prevailing party"); Amarel, 102 F.3d at 1523.

I. Prevailing Party Status

Plaintiffs' first objection is that the court cannot award costs to defendant because it is not a prevailing party. Plaintiff argues that the court's order did not materially alter the parties' legal relationship because it only decided that

---

[1] Plaintiff states in her objections that she will appeal this court's previous order. Regardless, the court elects to use its discretion and rule on the request for costs. See 1993 Advisory Committee Notes to Fed. R. Civ. P. 54(d).

2

ERISA applied instead of state law. (Pl.'s Objs. to Def.'s Bill of Costs at 1–2.)

This argument ignores the judgment itself. (Docket No. 59.) Pursuant to the stipulation signed by both parties, the court entered judgment in favor of defendant on both of plaintiff's claims.[2] Therefore, defendant is clearly a prevailing party. See Labotest, Inc. v. Bonta, 297 F.3d 892, 895 (9th Cir. 2002) (finding that a court's incorporation of a stipulation is enough to qualify a party as a prevailing party).

II. Court's Discretion to Deny All Costs

Plaintiff also argues that the court should exercise its discretion to deny all costs because of (1) the financial disparity between the parties, (2) plaintiff's limited financial means, (3) defendant's misconduct, (4) the potential chilling effect on future litigation if costs are granted, (5) the plaintiff's good faith in litigating, and (6) the importance of the case.

A district court may consider a variety of reasons, including those mentioned by the plaintiff, in determining whether to exercise its discretion to deny costs to the prevailing party. See Champion Produce, Inc. v. Ruby Robinson Co., 342 F.3d 1016, 1022 (9th Cir. 2003).

A. Financial Disparity Between the Parties

Plaintiff argues that this court should deny all costs because she is an individual and defendant is a $265 billion

---

[2] The judgment explicitly said that the court would "determine the amount, if any, of costs of suit to which [defendant] is entitled." (Judgment at 2.)

company. Such a disparity by itself, however, is insufficient to deny costs, given that even plaintiffs who proceed in forma pauperis are not per se protected from taxation of costs. See Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994). A financial disparity will almost always exist between individual plaintiffs litigating against large corporations. The presumption of Rule 54(d)(1) may sometimes be overcome by a financial disparity, but the bulk of these cases deal with civil rights issues or the application of important federal statutes. See Van Horn v. Dhillon, No. 08-CV-01622 LJO DLB, 2011 WL 66244, at *4 (E.D. Cal. Jan. 10, 2011). Therefore, the mere fact of a financial disparity is not sufficiently persuasive to support a denial of costs.

B. Plaintiff's Limited Financial Resources

Next, in her declaration, plaintiff claims that (1) she has earned no salary from her physical therapy business since 2009; (2) she was forced to close her office permanently in 2014 after losing key staff; (3) her only income is $2,495 from Social Security Disability Insurance; (4) she has incurred hundreds of thousands of dollars in criminal defense fees; (5) she has a lien against her home; (6) the San Joaquin County District Attorney's Office has frozen her bank accounts containing less than $20,000; (7) she owes $12,335.03 in tax attorney fees; (8) she owes $30,144.04 to The Grey Law Firm for costs related to this action; (9) she owes a monthly mortgage of $2,055.86; and (10) she has had to liquidate much of her IRA which is currently worth approximately $236,800. (Decl. of Devra Bommarito ("Bommarito Decl.") ¶¶ 3-13).

4

Even if plaintiff's declaration is completely and fully accurate,[3] she has not put forth enough evidence to establish indigency. Plaintiff claims that her IRA is "currently worth approximately $236,800." (Bommarito Decl. ¶ 13). Defendant's costs are only a fraction of that amount. Thus, plaintiff has not demonstrated that payment of defendant's costs would make her indigent. See Rivera v. NIBCO, 701 F. Supp. 2d 1135, 1143 (E.D. Cal. 2010) (Wanger, J.) (finding that the proper inquiry is whether an award of costs would render the party indigent).

C. Defendant's Misconduct

Plaintiff cursorily asserts that the primary drain on her assets have been the costs related to her criminal defense, which she claims resulted from defendant's supposed misconduct. More specifically, she claims that defendant "pivot[ed] from an unbiased evaluator of her insurance claim to a retaliatory advocate in search of information to justify terminating her benefits, paint her as a liar and cheat, and assist in a criminal

---

[3] Plaintiff has not provided any documentation that supports her current claims about her assets and liabilities. The only evidence she puts forth are her statements in her declaration. She has not included any corporate tax returns for her business, evidence regarding her personal residence, bills related to her legal fees, or any financial documents about her IRA. Thus, her alleged limited financial means are likely insufficient to disallow costs in this case. See, e.g., Fletes v. City of San Diego, No. 13-cv-2279-JAH(JMA), 2016 WL 6804434, at *2-3 (S.D. Cal. July 1, 2016) (requiring plaintiff to prove indigence through documentation because "mere assertions are inadequate to demonstrate indigence that would warrant relief from Plaintiff's obligation to pay costs"); Ritchie v. Haw. Dep't of Pub. Safety, No. 14-46 LEK-KJM, 2017 WL 4172500, at *3-6 (D. Haw. Aug. 23, 2017) (plaintiff's representations regarding her employment status, current salary, and state of finances were insufficient, without detailed information regarding her assets, to establish indigency for purposes of bill of costs).

prosecution of her for insurance fraud." (Pl.'s Objs. to Def.'s Bill of Costs at 4.)

This court already decided that defendant did not act in bad faith. (Docket No. 57). In ruling on defendant's motion for partial summary judgment, the court concluded that defendant had a reasonable basis to deny her insurance claim given plaintiff's misrepresentations and evidence that plaintiff was working as a physical therapist. Even though the court did not express an opinion on the merits of plaintiff's breach of contract claim, the court did conclude that defendant's actions were reasonable given the circumstances. Plaintiff has not provided any basis for the court to conclude that defendant's involvement with plaintiff's criminal prosecution was inappropriate.

D. <u>Chilling Effect on Future Litigation</u>

Plaintiff claims that requiring her to pay defendant's costs would chill litigation by individuals against powerful corporations because the costs associated with litigation would be too great a risk.

Plaintiff provides no justification for why costs upwards of $13,000 would chill future insurance litigation. The Ninth Circuit has only discussed the chilling effect of awarding costs against plaintiffs in the context of civil rights litigation, though some district courts have discussed this factor in the context of other types of "public interest" litigation. See, e.g., <u>Stanley v. Univ. of S. Cal.</u>, 178 F.3d 1069, 1080 (9th Cir. 1999) ("[T]he imposition of such high costs on losing civil rights plaintiffs of modest means may chill civil

6

rights litigation . . . ."); Ass'n of Mex. Am. Educators, 231 F.3d at 593 (discussing Stanley); Makaneole v. SolarWorld Indus. Am., Inc., 3:14-CV-1528-PK, 2017 WL 2345706, *3 (D. Or. May 10, 2017) (recommending that $2,375.40 in costs be denied because awarding costs would have a significant chilling effect on future class action wage-claim litigation where the potential individual recovery is small). The court assumes, but does not decide, that courts may consider whether an award of costs will chill subsequent insurance contract actions. However, the facts of this particular case counsel against finding any chilling effect. Just as plaintiffs with potentially meritorious claims should not be discouraged from bringing the, plaintiffs with non-meritorious claims should not unnecessarily be encouraged to bring them.

    E.    Plaintiff's Good Faith and the Importance of the Issue

Finally, plaintiff argues that costs should be denied because (1) she pursued the matter in good faith and (2) it is important to apply state law rather than ERISA to this matter.

Good faith by itself is insufficient to justify denying costs. Parties are legally and professionally obligated to act in good faith. See Fed. R. Civ. P 11; Model Rules of Prof'l Conduct R. 3.1. Denials based on good faith alone would render Rule 54(d) meaningless because any unsuccessful party who acted in accordance with their obligations would be free from paying any costs. See Popeil Bros., Inc. v. Schick Elec., Inc., 516 F.2d 772, 776 (7th Cir. 1975) ("If the awarding of costs could be thwarted every time the unsuccessful party is a normal, average party and not a knave, Rule 54(d) would have little substance remaining.")

7

Separately, plaintiff has not sufficiently argued that this case "present[s] a landmark issue of national importance." See Quan v. Comput. Sciences Corp., 623 F.3d 870, 888-89 (9th Cir. 2010) (citation omitted). Even though the issue of ERISA's applicability may be important to plaintiff's specific claim, plaintiff has not explained its significance in the context of other cases.

As such, plaintiff has not met her burden of showing that costs should not be awarded in this case, and the court finds that "the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." See Save Our Valley v. Sound Transit, 335 F.3d 932, 945 (9th Cir. 2003) (district court must provide reasons for denying costs but need not do so if it grants costs, as "[t]he presumption itself provides all the reason a court needs for awarding costs"). Accordingly, the court will proceed to examine plaintiffs' specific challenges to certain items in defendant's Bill of Costs.

II. Defendant's Request for Reduction of Costs

    A. Fees for Service of Summons and Subpoenas

Plaintiff challenges defendant's taxation of $528.04 in fees for service of subpoenas. Plaintiff claims that the thirteen charges for service (1) do not describe the need for subpoenas, (2) do not provide the hourly rate charged by the process server, or (3) include charges that are not related to subpoenas.

28 U.S.C. § 1921(1) provides for the collection of fees for serving a subpoena. Alflex Corp. v. Underwriters Labs.,

Inc., 914 F.2d 175, 178 (9th Cir. 1990). Based on the itemized description of the documents and parties, the plaintiff's subpoena for records appears to be "reasonable and necessary in light of the facts known at the time of service." See U.S. Fid. & Guar. Co. v. Lee Invs., LLC, Civ. No. 99-5583 OWW SMS, 2010 WL 3037500, at *3 (E.D. Cal. Aug. 2, 2010) (citation omitted). While plaintiff claims that the subpoena for records to the San Joaquin County District Attorney is unrelated to this case, the itemized invoice specifically lists that the documents were acquired for the civil case and both parties agree that the criminal prosecution of the plaintiff relates to this case.

Parties seeking to tax costs for subpoenas may only recover the fees that may be charged by the United States Marshals Service, which is $65 per hour for each item served per process server, plus travel costs and any other out-of-pocket expenses. 28 U.S.C. § 1920(1); 28 C.F.R. § 0.114(a)(3); Oleksy v. Gen. Elec. Co., No. 06-cv-1245, 2016 WL 7217725, at *3 (N.D. Ill. Dec. 12, 2016). All of defendant's subpoenas, except for the subpoena to the San Joaquin County District Attorney, satisfy this requirement. That invoice, however, does not itemize hourly rates or particular expenses. Because of the lack of detail as to this cost, the court will award $65 for this subpoena. See Oleksy, 2016 WL 7217725, at *3 (where party seeks to recover private service fees without providing sufficient information to determine if the rate exceeded the Marshals' normal rate, "the appropriate practice is to award the lesser of the amount that the party actually paid and the minimum charge of the U.S. Marshals") (citations and internal punctuation omitted).

Finally, defendant cannot recover costs for the service of documents. Communication charges, including courier and mail charges, cannot be taxed under Section 1920.[4] Nat'l Union Fire Ins. Co. of Pittsburgh v. Allied Prop. & Cas. Ins. Co., No. 2:12-CV-01380-MCE-KJ, 2014 WL 3529980, at *1 (E.D. Cal. July 16, 2014). Accordingly, defendant's requests for these costs are denied. The cost award will be reduced by $306.04. Defendant is thus entitled to recover $135.00 in fees for service of summons and subpoenas.

B. Transcripts and Related Costs

Plaintiff objects to awarding costs for the deposition transcripts of Sharon Hyde, Adam Kawa, Lisa Duller, Donald Seebach, and Mark Majewski. "Whether a transcript or deposition is 'necessary' must be determined in light of the facts known at the time the expense was incurred." Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr., 646 F. Supp. 2d 1206, 1219 (E.D. Cal. 2009) (Shubb, J.) (citation omitted).

Each challenged deposition appears necessary given the circumstances of the case. Sharon Hyde was the director of disability benefits at Northwestern Mutual at the time the decision was made to deny plaintiff's claim for disability benefits. Adam Kawa investigated the claim that plaintiff was working at the time she was collecting disability benefits. Lisa Duller approved the denial of the claim for benefits made by the

---

[4] Relatedly, defendant cannot recover for any printing costs related to the service of documents. Defendant has not shown that the printed service of these documents was necessary. See Robinson v. Kia Motors Am., Inc., No. 2:10-CV-03187-SOM, 2016 WL 4474505, at *4 (E.D. Cal. Aug. 25, 2016) (finding that printing costs must be necessarily incurred).

10

plaintiff. Donald Seebach was familiar with documentation relevant to plaintiff's claim. Mark Majewski was an employee of Northwestern Mutual and he was listed as a defendant in the original complaint.

The court finds that defendant may recover costs for the original and one certified copy of those deposition transcripts, as well as exhibit fees, read and sign fees, shipping and handling fees, production and processing fees, and fees for the court reporter's attendance, mileage, and parking, which all appear necessary to obtain the transcripts. See Daniel v. Ford Motor Co., No. 2:11-cv-2890 WBS EFB, 2018 WL 1960653, at *4 (E.D. Cal. Apr. 26, 2018) (citation omitted). However, the court will not allow costs for rough drafts, expedited fees, electronic litigation packages, or "LEF files," which appear to have been provided for the convenience of at the attorneys without an explanation of their necessity. Accordingly, the court will award for transcripts and related expenses as follows:

| | |
|---|---|
| Devra Bommarito | $ 1,289.60 |
| Sharon Hyde (Vol. 1) | $ 1,164.40 |
| Sharon Hyde (Vol. 2) | $ 224.25 |
| Mark Majewski | $ 945.00 |
| Adam Kawa | $ 661.45 |
| Lisa Duller | $ 1,130.95 |
| Donald Seebach | $ 818.25 |
| Total: | $ 6,233.90 |

C. Witness Fees

Witness fees are recoverable under 28 U.S.C. §§

11

1920(3). Relying on 28 U.S.C § 1821, Eastern District Local Rule 292 includes "[p]er diem, mileage, and subsistence for witnesses" within the list of items taxable as costs. Nothing within these statutes or the local rules indicates that witness fees include fees for subpoenaing documents from parties. Therefore, defendant's request for witness fees is denied and its total recovery is reduced by $105.00.

D. Copying Costs

28 U.S.C. §§ 1920(4) allows a prevailing party to recover fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case. For many of the same reasons discussed above, the court files and records defendants obtained appear to be necessarily obtained. The criminal prosecution of the plaintiff closely intersects with her civil claim; and defendant relied on the patient and medical records in their motion for partial summary judgment. As explained before, however, defendant cannot recover for the service of documents. Nat'l Union Fire Ins. Co. of Pittsburgh, 2014 WL, at *1. Accordingly, the court will award for exemplification and the costs of making copies as follows:

| | |
|---|---|
| San Joaquin Court File | $ 7.33 |
| San Joaquin Deposition File | $ 1,220.10 |
| Records of Jeff Jones | $ 33.00 |
| Records of Jenny Sanders | $ 0.75 |
| Records of Valley Medical | $ 17.00 |
| Records of Charter Pharmacy | $ 0.50 |
| Records of El Dorado | $ 1.50 |
| Records of Rite Aid | $ 0.25 |

12

|   |   |   |
|---|---|---|
| | San Joaquin Court File | $ 18.72 |
| | Total: | $ 1,299.15 |

E. <u>Total Costs</u>

In total, costs of $7,668.05 will be allowed for defendant and are taxed against plaintiff as follows:

|   |   |
|---|---|
| Subpoenas | $ 135.00 |
| Deposition and Related Costs | $ 6,233.90 |
| Copying Costs | $ 1,299.15 |
| TOTAL AWARD | $ 7,668.05 |

IT IS SO ORDERED.

Dated: September 25, 2018

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE